ALAN RAY COX, PLAINTIFF v. HOZELOCK, LTD., A/K/A HOZELOCK-ASL AND AS
HOZELOCK-ASL, LTD., DEFENDANT

No. 9121SC195

(Filed 7 January 1992)

**Process § 14 (NCI3d)— foreign manufacturer—product injected
into stream of commerce—exercise of personal jurisdiction
by N.C. proper**

The sole act of a manufacturer's intentional injection of
its product into the stream of commerce provides sufficient
grounds for a forum state's exercise of personal jurisdiction
over the foreign manufacturer defendant.

**Am Jur 2d, Process § 175.**

Judge WELLS concurring.

APPEAL by defendant from order entered 26 December 1990
by *Judge James J. Booker* in FORSYTH County Superior Court.
Heard in the Court of Appeals 2 December 1991.

Defendant is an English company engaged in the design,
·manufacture, distribution, maintenance and marketing of numerous
products including a water pressure sprayer known and designated
as "Polyspray" or "Polyspray2." Approximately 300,000 of these
sprayers were manufactured per year during the period 1 January
1985 through 1 January 1988. Of these, approximately 32,100 were
sold to two Pennsylvania distributors, Geiger Corporation and True
Temper Corporation. Replacement parts for the Polyspray were
also sold to Geiger and True Temper during this period.

Defendant was aware that Geiger was a wholesaler which bought
goods from manufacturers and resold them to retail stores in the
United States. Geiger sold approximately three dozen Polysprays
per year since 1986 to Piedmont Garden Supply of Salisbury, North
Carolina, which purchased such sprayers for resale in the ordinary
course of trade. Plaintiff's employer, A New Leaf, purchased these
sprayers from Piedmont Garden Supply as well as directly from
Geiger.

On or about 4 February 1987, plaintiff, in his capacity as an
employee of A New Leaf, was using a Polysprayer which was
manufactured by defendant. He attempted to clear an obstruction

COX v. HOZELOCK, LTD.

[105 N.C. App. 52 (1992)]

in the sprayer when it exploded in his face. Plaintiff's eye was damaged to such an extent that it had to be removed.

Plaintiff commenced this action on 2 February 1990 in Forsyth County Superior Court alleging breach of warranty and negligence. Defendant removed the action to the United States District Court for the Middle District of North Carolina on 28 February 1990. Defendant filed an answer and motion to dismiss, asserting lack of personal jurisdiction over defendant pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure. The action was remanded to Forsyth County Superior Court which denied defendant's motion to dismiss for lack of personal jurisdiction. From that order defendant now appeals.

*Charles O. Peed for plaintiff appellee.*

*Craige, Brawley, Lüpfert & Ross, by William W. Walker, for defendant appellant.*

WALKER, Judge.

In order to establish personal jurisdiction over a foreign defendant a two part test must be satisfied. First, there must be a North Carolina statute which permits the exercise of personal jurisdiction over defendant. In the instant case the trial court properly exerted jurisdiction over defendant under G.S. 1-75.4(4)b, and defendant conceded this point. The second part of the inquiry addresses whether the exercise of such personal jurisdiction over defendant is consistent with the well ingrained constitutional notions of due process and fairness. It is this question which we consider on appeal.

We begin by noting that the ability of our courts to exercise personal jurisdiction over a foreign defendant was articulated early on by the U. S. Supreme Court in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 90 L.Ed. 95, 102 (1945), where the Court held:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

More recently the Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 62 L.Ed.2d 490 (1980),

is instructive as to when jurisdiction may lawfully be asserted. In *World-Wide*, plaintiffs were New York residents who purchased an automobile from a retailer in New York. Following an accident involving the automobile in Oklahoma, plaintiffs initiated suit against the New York retailer and New York distributor in Oklahoma state court. The Supreme Court held, however, that such an exercise of personal jurisdiction over the New York defendants was incompatible with the Due Process Clause of the Fourteenth Amendment in light of the fact that the sole connection with the forum state of Oklahoma was that the accident had occurred there. Though it was arguably foreseeable a product sold elsewhere could reach the forum state, the *World-Wide* Court noted that "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* at 295, 62 L.Ed.2d at 500. The Court clarified this statement, however, by noting:

> This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Id.* at 297, 62 L.Ed.2d at 501. As to when defendant's connection with the forum state would cross that threshold so that it would be consistent with the notions of due process and fairness to subject the defendant to the personal jurisdiction of the forum state, the Court stated:

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the *stream of commerce* with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 297-298, 62 L.Ed.2d at 501-502 (emphasis added).

This Court relied on the language of *World-Wide* in rendering our decision in *Bush v. BASF Wyandotte Corp.*, 64 N.C.App. 41,

306 S.E.2d 562 (1983). In *Bush*, a North Carolina plaintiff was injured while operating a washing machine for her employer. The machine had been manufactured by a Swedish corporation which sold several such machines to a distributor in New York. The New York distributor then sold the washing machine to plaintiff's employer. At no time did defendant corporation attempt to limit the area of distribution so as to exclude North Carolina. Upon an analysis of various state court and federal decisions, this Court held:

> [I]n light of the fact that defendant-appellees purposefully injected their product into the stream of commerce without any indication that it desired to limit the area of distribution of its product so as to exclude North Carolina, we hold that the courts of North Carolina may lawfully assert personal jurisdiction over defendant-appellees.

*Id.* at 51, 306 S.E.2d at 568.

We explicitly reaffirmed *Bush* in the more recent decision of *Warzynski v. Empire Comfort Systems, Inc.*, 102 N.C.App. 222, 401 S.E.2d 801 (1991). In that case, defendant was a Spanish corporation with its principal office in Spain. Defendant manufactured a gas heater which it then sold to an Illinois distributor and conferred upon that distributor the exclusive rights to distribution of its product in the United States. The Illinois distributor had a North Carolina company acting as distributor in North Carolina. The North Carolina distributor thereby sold the heater to a North Carolina retailer who then sold it to plaintiff. Plaintiffs sued after the heater allegedly started a fire in their home. This Court found that insofar as the defendant intentionally injected the product into the stream of commerce, *Bush* was the controlling authority and defendant had "subjected itself to the jurisdiction of the courts of this state." *Id.* at 229, 401 S.E.2d at 805.

We are struck by the factual similarities between *Bush*, *Warzynski*, and the case before us. Without question, this defendant purposefully and intentionally placed the product in the stream of interstate commerce. The findings of fact by the trial judge indicated defendant regularly sold its Polyspray and replacement parts to Geiger and True Temper. Further, defendant was fully aware that Geiger was a wholesaler which bought goods from manufacturers such as defendant and resold those goods in the United States. At no time did defendant attempt to limit its area

COX v. HOZELOCK, LTD.

[105 N.C. App. 52 (1992)]

of distribution so as to exclude North Carolina. These facts therefore indicate defendant knew or reasonably should have known that, due to its relationship with Geiger, its products would be used in states other than Pennsylvania. Otherwise, defendant corporation would not have sold such products to a distributor but to someone with whom the product would remain for use, or would have taken steps to limit the distribution area of the product. Instead, defendant sought to expand its operations so as to reap profits in the U. S. marketplace. As such, defendant availed itself of the laws of these various states. Consistent with the notions of due process and fairness defendant could then reasonably expect to be subject to the jurisdictions of the courts in those states, so that the exercise of personal jurisdiction over the defendant by one of those states, North Carolina, did not violate the Due Process Clause.

Counsel for defendant stated at oral arguments that proper jurisdiction in this case would be in Pennsylvania, where defendant's goods were introduced into the U. S. marketplace. To recognize this view, however, plaintiffs in this state and elsewhere would be relegated to bringing their actions in Pennsylvania, even if the claim did not arise in Pennsylvania and plaintiffs had no other contacts with that state. Upholding this argument would effectively give defendant limited immunity insofar as the barriers facing plaintiffs, financial or otherwise, would be too great in many cases to warrant pursuing their claims by having to initiate suit in Pennsylvania. Consequently, Pennsylvania cannot be held to be the exclusive forum.

Defendant would have us rely on *Moss v. The City of Winston-Salem*, 254 N.C. 480, 119 S.E.2d 445 (1961), for the proposition that personal jurisdiction cannot be conferred on a foreign defendant solely on the basis the defendant intentionally placed goods in the stream of commerce. In that case, defendant Wood was an Illinois corporation which manufactured a lawn mower in Illinois and sold it to an unrelated distributor in Virginia. The distributor then sold the mower to a business in North Carolina which in turn sold it to the City of Winston-Salem. Plaintiff was injured by the mower while in the employ of the City. Although the facts indicated defendant Wood had intentionally placed the mower in the stream of interstate commerce, the North Carolina Supreme Court held that defendant Wood "has not had any contacts in the State of North Carolina that could make it amenable to process

from the courts of North Carolina for the purpose of a judgment in *personam.*" *Id.* at 484, 119 S.E.2d at 448.

We find *Moss* not to be dispositive to this case. The rationale and decision of *Moss* is largely premised on a prior case, *Putnam v. Triangle Publications, Inc.,* 245 N.C. 432, 96 S.E.2d 445 (1957). In *Putnam*, the North Carolina Supreme Court held personal jurisdiction could not be exercised over a foreign defendant who sold magazines to distributors within this state, but delivered and surrendered title to the magazines to carriers outside North Carolina. The court enunciated, however, that whether a foreign defendant can be made subject to personal jurisdiction of the forum state is a question of due process "which must be decided in accord with the decisions of the U. S. Supreme Court." *Id.* at 438, 96 S.E.2d at 450. Thus, it is crucial to note that when *Putnam* and *Moss* were decided, the U. S. Supreme Court had not yet rendered the *World-Wide* decision. The precedential value of both *Moss* and *Putnam*, by their own reasoning, must therefore yield to the rationale of *World-Wide*.

Further, we cannot agree that the impact of *World-Wide* has been significantly lessened due to the recent Supreme Court decision in *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 94 L.Ed.2d 92 (1987). There plaintiff, a non-California resident, sought to maintain a cross-claim against a Japanese manufacturer in California state court. Finding California's own interests to be minimal and that an exercise of personal jurisdiction would pose an undue burden on defendant, the Supreme Court held California's exercise of jurisdiction over *Asahi* violated the Due Process Clause, was unreasonable and unfair. The Court was evenly split, however, as to the ramifications of *World-Wide* and whether intentionally placing a product in the stream of commerce, without more, provided a sufficient basis for jurisdiction over a foreign defendant.

Subsequently, we hold *World-Wide* still to be the controlling point of authority on this question of when a forum state may assert personal jurisdiction over a foreign defendant. "*Asahi* does not overrule previous cases that follow the stream of commerce theory, including *Bush v. BASF*." *Warzynski v. Empire Comfort Systems, Inc.,* 102 N.C.App. 222, 229, 401 S.E.2d 801, 805 (1991). In conformity with the trend of North Carolina case law, we uphold the stream of commerce doctrine and find it consistent with the

federal Due Process Clause. We hold the sole act of a manufacturer's intentional injection of his product into the stream of commerce provides sufficient grounds for a forum state's exercise of personal jurisdiction over the foreign manufacturer defendant. Pursuant to the facts in this case, the North Carolina court may properly invoke personal jurisdiction over defendant.

Affirmed.

Judge LEWIS concurs.

Judge WELLS concurs with a separate opinion.

Judge WELLS concurring.

I concur with the result reached by the majority with this additional comment. The "stream of commerce" standard set out in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 62 L.Ed.2d 490 (1980) establishes a two-step analysis: (1) whether a foreign defendant has placed or delivered its product into the *stream of commerce*, and (2) with the expectation that the product will be purchased by consumers in the forum state. The acts of the defendant in this case meet both requirements of this standard.